UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE WARD-HOWIE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRONTWAVE CREDIT UNION,<br><br>Defendant. | Case No.: 22-CV-890-CAB-JLB<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>[Doc. No. 9] |

Plaintiff Elaine Ward-Howie filed this putative class action lawsuit in San Diego County Superior Court on April 29, 2022. On June 17, 2022, Defendant Frontwave Credit Union ("Frontwave") removed the action to this Court on the grounds that subject matter jurisdiction exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Ten days later, Frontwave filed a motion to dismiss for failure to state a claim [Doc. No. 7], and ten days after that, Plaintiff filed a motion to remand [Doc. No. 9] on the grounds that Frontwave had not satisfied its burden to establish that the amount in controversy exceeds CAFA's jurisdictional threshold. Separately, the Court ordered the parties to show cause why the case should not be remanded for lack of diversity or under CAFA's local controversy exception. For the reasons set forth below, Plaintiff's motion to remand is

granted, rendering it unnecessary to decide whether the local controversy exception also requires or permits remand.

### I.      Background

Plaintiff, who has a checking account with Frontwave, alleges in the complaint that in certain circumstances, Frontwave charges overdraft fees in violation of the account agreement. Specifically, the complaint alleges that Frontwave charges an overdraft fee for transactions made with a debit card at a time when sufficient funds were available in the account because in the time between when the debit card transaction is made and when it settles, an intervening transaction on the checking account reduces the amount of funds to less than the amount of the prior debit card transaction. The complaint calls these transactions "Authorize Positive, Purportedly Settle Negative Transactions" or "APPSN Transactions."

The complaint asserts claims for breach of contract and violation of California's unfair competition law, California Business and Professions Code § 17200 *et seq*. ("UCL"), arising out of the overdraft fees charged for these APPSN Transactions. Plaintiff seeks certification of a class consisting of all Frontwave checking accountholders who were charged overdraft fees on APPSN Transactions during the applicable statute of limitations. The complaint prays for relief in the form of restitution of the allegedly wrongful overdraft fees, disgorgement of ill-gotten gains, actual, statutory, punitive and exemplary damages, as permitted by law, and attorney's fees. Notably, notwithstanding extensive argument by both sides concerning the valuation of injunctive relief as part of the amount in controversy for CAFA jurisdiction, the complaint does not seek injunctive relief. The words "enjoin," "injunction" or "injunctive" do not appear in the complaint.

Although the complaint is silent as to the amount of damages sought by the putative plaintiff class, Frontwave contends in its notice of removal that over $5,000,000 is in controversy. Frontwave's estimate of the amount in controversy has four categories: (1) the amount of APPSN fees it had charged during the class period as of the date the complaint was filed; (2) the amount of APPSN fees it purportedly intends to continue

charging through class certification in this case; (3) future APPSN fees for the next four years; and (4) attorney's fees. For the first category, the notice of removal alleges that Frontwave's AAPSN overdraft fee revenue for the four years preceding the filing of the complaint "could be $2.27 million." [Doc. No. 1-9 at ¶ 3; *see also* Doc. No. 1 at ¶ 15.] For the second category, Frontwave estimates that "[i]f a class is not certified until a year from now, that could mean an additional approximately $500,000 in damages." [Doc. No. 1-9 at ¶ 3.] For the third category, in seeming disregard of the complaint itself, Frontwave contends that the complaint seeks injunctive relief preventing Frontwave from charging AAPSN fees in the future and claims that the cost of this injunction would be the value of such fees for the next four years, which Frontwave estimates to be $2.77 million. [Doc. No. 1 at ¶ 16.] Finally, Frontwave contends that the amount of Plaintiff's potential attorney's fees through trial should be included in the calculation and argues that such fees will be at least $1 million. [*Id.* at ¶ 17.]

## II. Legal Standards

"A defendant may remove to federal district court an action first brought in state court when the district court would have original jurisdiction." *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) (citing 28 U.S.C. § 1441). Generally, subject matter jurisdiction is based on the presence of a federal question, *see* 28 U.S.C. § 1331, or on complete diversity between the parties, *see* 28 U.S.C. § 1332. Here, however, Frontwave argues that this Court has jurisdiction based on CAFA. Pursuant to CAFA, federal district courts have original subject matter jurisdiction over class actions in which a member of the plaintiff class is a citizen of a state different from any defendant and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). "Section 1332(d) thus abandons the complete diversity rule for covered class actions." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006). Nevertheless, "under CAFA the burden of establishing removal jurisdiction is, as it was before CAFA, on the party wishing to see the case in federal court." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010).

Usually, "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). However, "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Thus, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

To remove a case pursuant to CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* "But evidence establishing the amount is required where . . . defendant's assertion of the amount in controversy is contested by plaintiffs. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Ibarra*, 775 F.3d at 1197 (citations and internal punctuation omitted). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197.

### III.  Discussion

In her motion to remand, Plaintiff disputes Frontwave's allegations as to the amount in controversy and argues that Frontwave's estimates are speculative, not supported by any evidence, and implausible. The majority of Frontwave's opposition, meanwhile, focuses on whether Plaintiff is making a facial or a factual attack on Frontwave's jurisdictional allegations, arguing that Plaintiff is making only a facial attack, and that Frontwave need not provide any evidence to support its allegations concerning the amount in controversy. "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction. A factual attack contests the truth of the allegations themselves. When a plaintiff mounts a factual attack, the burden is on

the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (internal citations and punctuation removed). Although the Court finds that Plaintiff is challenging "the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence" *id.* at 700, Plaintiff's motion to remand succeeds regardless of whether it is deemed a facial or factual attack.

Specifically, assuming the truth of Frontwave's calculations, they are insufficient to invoke federal jurisdiction because they include the valuation of an injunction prohibiting Frontwave from charging overdraft fees for APPSN Transactions. As stated above, the complaint does not ask for such an injunction, nor indeed any injunctive relief.[1] Frontwave appears to rely on the complaint's prayer for a declaration that Frontwave's assessment of overdraft fees on APPSN Transactions is a breach of contract and unfair, fraudulent, and unlawful, for its argument about the existence of injunctive relief. Frontwave argues that "[t]he only way for Frontwave to comply with that kind of judicial declaration would be to stop charging APPSN fees." [Doc. No. 14 at 12.] The Court is not persuaded.

The arguably superfluous declaration prayed for in the complaint does not require Frontwave to "comply." Rather, the declaration prayed for by Plaintiff would be no more than a statement about Frontwave's past assessment of overdraft fees on APPSN Transactions. More importantly, such a declaration is not equivalent to an injunction

---

[1] In making this conclusion, the Court relies on the language and relief sought in the complaint itself, rather than the arguments made by Plaintiff in her motion to remand, which somewhat puzzlingly contend that Plaintiff does seek "to enjoin Frontwave's misrepresentations of its [overdraft] fee practice as to APPSN Transactions," and "to enjoin Frontwave from continuing to mislead accountholders in its disclosures." [Doc. No. 9-1 at 7.] The allegations in the complaint that Plaintiff cites for these assertions do not mention injunctive relief. *See* Complaint ¶¶ 1-3, 17, 24, 36-43. Assuming, for the sake of argument that the complaint expressly sought the injunctive relief Plaintiff claims it does in its motion to remand, the Court would still find that Frontwave has not met its burden because the fact would remain that the form of injunctive relief that Frontwave included in its calculation of the amount in controversy (i.e., an injunction on charging overdraft fees for APPSN transactions) is not sought by Plaintiff and therefore not part of the aggregate amount in controversy.

5

precluding Frontwave from continuing to assess overdraft fees on APPSN Transactions going forward. Indeed, both parties point out that, based on the Ninth Circuit's holding in *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 713, 726 (9th Cir. 2012), a district court's ability to enjoin banking practices or disclosures is limited by federal preemption. *See* Motion to Remand at 7; Motion to Dismiss at 6. In other words, Plaintiff does not, and by its own admission, *cannot*, seek to enjoin Frontwave from charging overdraft fees for APPSN Transactions. Although the outcome of this case might lead Frontwave to make the business decision to change its current procedures for assessing overdraft fees on APPSN Transactions going forward or to amend its contracts to avoid future lawsuits like this one, the complaint does not seek any injunctive relief that would *require* Frontwave to make any changes to its disclosures or to cease assessing overdraft fees on APPSN Transactions.

In sum, Frontwave alleges that it would cost Frontwave $2.77 million in foregone future overdraft fees for APPSN Transactions if the Court enters an injunction prohibiting the recovery of such fees. The complaint, however, does not seek such an injunction. Accordingly, the $2.77 million in future overdraft fees that such an injunction might cost Frontwave is not in controversy in this case. Without this $2.77 million attributable to injunctive relief that is not sought in this case, Frontwave's calculation of the amount in controversy consists of (1) $2.27 million for past overdraft fees on APPSN Transactions as of the date the complaints was filed; (2) $500,000 for overdraft fees Frontwave expects to assess on APPSN Transactions up to the date of class certification; and (3) at least $1 million in attorney's fees. Assuming that these allegations are plausible and based on reasonable assumptions, and even doubling the amount of attorney's fees estimated by Frontwave, the total does not exceed $5 million. Because Frontwave's estimate of the amount in controversy based on the relief actually sought by the plaintiff class in this case does not exceed $5 million, Frontwave's allegations are insufficient on their face to establish federal jurisdiction.

### IV. Disposition

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's motion to remand is **GRANTED**. This case is **REMANDED** to the Superior Court for San Diego County.

It is **SO ORDERED**.

Dated: August 11, 2022

Hon. Cathy Ann Bencivengo
United States District Judge